## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

E.G.W., a minor, by her parent and next friend,
Elizabeth and Kevin Wrege
4841 W Street, NW
Washington DC 20007

and

ELIZABETH AND KEVIN WREGE
4841 W Street, NW
Washington DC 20007,

     Plaintiffs,

     v.

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, N.W.,
Washington, D.C. 20001,

     Defendant.

**Civil Action No.  22-1139**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preliminary Statement

1.     This is an action brought by Elizabeth and Kevin Wrege ("the parents"), in their

own right and on behalf of their daughter, E.G.W., alleging that the District of Columbia Public

Schools ("DCPS" or "school system"), failed to provide E.G.W. with the free appropriate public

education ("FAPE"), to which she is entitled under the Individuals With Disabilities Education

Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.*  DCPS denied this student a FAPE when

it failed to propose an appropriate Individualized Education Program ("IEP"), and placement for

E.G.W. for the 2021-2022 school year.  The Hearing Officer who heard the case at the

administrative level erroneously concluded that DCPS had met its burden of proof and that the

proposed IEP and placement are appropriate to meet E.G.W.'s needs.  The Hearing Officer also denied the parents participation in the process by refusing to order DCPS to allow their expert an observation of the proposed program/placement in violation of D.C. law.  The Hearing Officer denied the parents their requested relief of funding and placement at the Lab School of Washington ("Lab School").  The parent brings this appeal and seek a reversal of the Hearing Officer's Decision issued April 4, 2022.

## Jurisdiction

2.      This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*., and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.      Plaintiffs have exhausted their administrative remedies and seek to reverse the order of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case #2021-0126.

## Parties

4.      E.G.W. is a twelve-year-old, educationally disabled student who at all times relevant to this action resided in the District of Columbia.  Her parents, Elizabeth and Kevin Wrege, bring this action on E.G.W.'s behalf and in their own right.

5.      The District of Columbia is a municipal corporation receiving federal funds under the IDEA.  20 U.S.C. §§ 1400 *et seq*.  DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education.  DCPS is responsible for complying with federal law with respect to the provision of a FAPE to each educationally disabled child in the District of

Columbia.

## Factual Allegations

1.      E.G.W. is a twelve-year-old student who resides in the District of Columbia.  She has been diagnosed with Attention Deficit Hyperactivity Disorder-Combined Presentation ("ADHD"), a Language Disorder, Specific Learning Disorders with impairment in Reading, Math, and Written Expression, a Generalized Anxiety Disorder, and an Unspecified Mood Disorder.

2.      District of Columbia Public Schools ("DCPS" or "school system"), has found E.G.W. eligible for special education services under the Individuals with Disabilities Education Improvement Act ("IDEA"), as a student with Multiple Disabilities, including a Specific Learning Disability and an Other Health Impairment.

3.      E.G.W.'s early history is notable for delayed speech and language development, sensory-motor issues, attention-related difficulties, and slow academic skill development.

4.      E.G.W. attended her local DCPS school until second grade when her parents enrolled her at to the Lab School of Washington ("Lab").

5.      E.G.W.'s parents filed a Due Process Complaint Notice against DCPS in December 2017, which was eventually resolved with the school system placing and funding her at Lab in March of 2018.

6.      DCPS continued to place and fund E.G.W. at Lab for the 2018-2019, 2019-2020, and 2020-2021 school years, where she has thrived and made educational progress.

7.      E.G.W. began fifth grade for the 2019-20 school year at Lab.  In January 2020, she was seen by Dr. William Stixrud for a neuropsychological re-evaluation.  However, the

evaluation was not completed until August 2020 due to the COVID-19 pandemic.

8.      Dr. Stixrud administered comprehensive testing, which allowed him to observe how E.G.W. had progressed since he last tested her in October 2015.  Cognitively, he found that she is a bright girl with strengths in the domains of verbal intelligence, visual-spatial intelligence, and logical-mathematical intelligence.  At the same time, cognitive weaknesses were detected in the areas of attention and executive functioning; phonological awareness and automatic verbal sequencing; and receptive and expressive language.

9.      On measures of attention and executive functioning, Dr. Stixrud found that E.G.W. struggled with visual and auditory attention, as well as aspects of executive functioning, including inhibitory control, working memory, planning, organizing, and self-monitoring.   His findings were consistent with his previous diagnosis of ADHD-Combined Presentation.

10.      Dr. Stixrud also found ongoing weaknesses in E.G.W.'s phonological awareness that underlie her dyslexia.  On testing of receptive and expressive language, she demonstrated a weak ability to understand grammatically complex language while simultaneously struggling to "find" desired words and organize oral expression, warranting a continued diagnosis of a Language Disorder.

11.      Academically, on the testing completed by Dr. Stixrud, E.G.W.'s performance on reading tests was impacted by impulsivity and deficits in phonological awareness and automaticity.  Testing of written language revealed very weak spelling ability, which Dr. Stixrud determined was a manifestation of her dyslexia.  Math testing yielded below average scores on measures of computational skill, math applications, and math fact fluency.

12.      Given the results, Dr. Stixrud diagnosed E.G.W. with a Specific Learning

Disorder with impairment in reading, math, and written language.

13.     In the area of social/emotional, Dr. Stixrud found that, consistent with prior testing, E.G.W. continued to have a very sensitive and easily triggered stress response (fight or flight response).  On self-reports, E.G.W. responses produced high scores in the areas of depression and anxiety.  He found that, "these high scores imply that she is currently experiencing much more worry, fearfulness, rumination, social anxiety, discouragement, and self-doubt than she did when was younger, feelings that have undoubtedly been intensified by the social isolation caused by the pandemic."

14.     Dr. Stixrud diagnosed E.G.W. with a Generalized Anxiety Disorder and Unspecified Mood Disorder.

15.     Dr. Stixrud also examined E.G.W.'s history of trouble reading and responding to social cues, sustaining back-and-forth conversations, and maintaining friendships.  He considered a possible social disorder, such as an Autism Spectrum Disorder, but concluded that her social challenges were likely related to her weaknesses in receptive and expressive language, as well as anxiety and mood-related issues.  Further, Dr. Stixrud stated that E.G.W. had not exhibited any social difficulties before the age of six, and social disorders are developmental in nature and are typically apparent by age four or five.

16.     With regard to E.G.W.'s educational placement, Dr. Stixrud found that given her severe ADHD, her language disorder, multiple academic challenges, social issues, and anxiety and mood-related difficulties, she required a full-time placement in a special education program.

17.     Dr. Stixrud recommended continued placement at the Lab School of Washington. Dr. Stixrud also recommended speech/language therapy, Occupational Therapy, and

psychological counseling, as well as extensive academic accommodations.  He noted that given her social challenges, she will need small class sizes and teacher-provided support and supervision even for nonacademic subjects, lunch, and recess periods.

18.     Prior to finalizing the report, Dr. Stixrud sent drafts to the parents and the family's long-time educational consultant, Dr. Laura Solomon, to review for accuracy.  Dr. Solomon found some errors in the report and contacted Dr. Stixrud to make changes, which Dr. Stixrud did.

19.     Dr. Stixrud's corrected report was provided to DCPS for consideration.

20.     On March 8, 2021, DCPS convened a meeting and reviewed the report, indicating it would not accept many of Dr. Stixrud's findings.  DCPS claimed that Dr. Stixrud showed bias because of his recommendation that E.G.W. continue at Lab.

21.     DCPS indicated it would like to do its own psychological and educational assessments of E.G.W., which the parents agreed to consider.

22.     Following the meeting, on March 19, 2021, E.G.W.'s parents, through counsel, sent a letter to the DCPS compliance manager, Sean Bradley, requesting clarification as to what policy or standard the school system was relying upon in its rejection of Dr. Stixrud's report. The parents also requested more information as to why DCPS sought to complete its own psychological and educational testing, despite the fact that comprehensive testing of E.G.W. had been completed by Dr. Stixrud.

23.     DCPS did not respond to the parents' letter.

24.     On May 12, 2021, E.G.W.'s parents followed up with Mr. Bradley requesting a response to their letter.  They also pointed out that they had not been contacted about further

testing.

25.     After receiving no response to the May 12th email, the parents followed up a third time and requested any information or direction as to what would be discussed at an upcoming IEP meeting scheduled on May 21, 2021.  Mr. Bradley responded that the team would review the data available to them, including Dr. Stixrud's report, update eligibility, and revise E.W's IEP.

26.     At the May 21st meeting, DCPS determined the E.G.W. continued to qualify for services as a student with a Specific Learning Disability in math, but not in reading or written expression.

27.     The parents, Dr. Laura Solomon, and Lab staff agreed with DCPS as to E.G.W.'s needs in math, but disagreed with the determination that she no longer had needs in reading and written expression.  Their disagreement was based upon Dr. Stixrud's findings, and her performance at the Lab School including work samples demonstrating her ongoing needs.

28.     DCPS concluded that ten hours per week of self-contained math instruction was appropriate for E.G.W.  The parents and Dr. Solomon questioned how these hours would be implemented, as two hours of math daily was not realistic or appropriate.

29.     DCPS failed to provide a cogent or responsive explanation for its IEP and/or placement decisions, and refused to consider supporting E.G.W.'s continued placement at Lab.

30.     The final proposed IEP contained no goals or services to address E.G.W.'s needs in the areas of reading and written expression, including spelling.

31.     The final proposal for the 2021-2022 school year provided ten hours of self-contained support weekly, 360 minutes per month of Occupational Therapy services, and 360 minutes per month of speech/language therapy all to be provided at E.G.W.'s home school of

Hardy Middle School.

32.     DCPS did not propose any counseling or psychotherapy services, despite E.G.W.'s history of anxiety and social difficulties.

33.     The parents rejected the proposed IEP and placement.

34.     On August 4, 2021, E.G.W.'s parents served notice of their intent to maintain her enrollment at Lab for the 2021-22 school year due to the school system's failure to propose an appropriate IEP and placement tailored to meet E.G.W.'s unique needs.

35.     The parents filed a due process hearing request on August 24, 2022, alleging that DCPS failed to provide E.G.W. and her parents a free and appropriate public education ("FAPE") and seeking continued placement at the Lab School of Washington.  The parents also invoked their IDEA "stay put" rights when filing.

36.     On September 3, 2021, Dr. Solomon reached out to staff at Hardy, introduced herself, and requested to observe the proposed placement for E.G.W.

37.     Tonya White, the special education coordinator at Hardy, responded that only the parents would be allowed to observe, and offered some dates at the end of the month.

38.     DCPS refused to allow Dr. Solomon to observe the proposed placement.

39.     Pursuant to D.C. Code § 38-2571.03(5), the parents filed a motion to permit observation with the Hearing Officer on September 16, 2022.

40.     On September 29, 2022, the Hearing Officer denied the parents' motion, claiming Dr. Solomon provides "representation" to the parents and was therefore excluded from an observation.

41.     The denial was based solely on language in Dr. Solomon's authorization form in

which parents give their consent for Dr. Solomon, "to represent my/our child, [E.G.W.], in negotiations, meetings, and/or administrative proceedings in order to obtain placement, evaluation, and/or therapy services."

42.     The Hearing Officer found that this language violated the portion of the D.C. law that provides that certain designees are excluded from observing, including those that are, "representing the parent's child in litigation related to the provision of free and appropriate public education for that child."

43.     On October 4, 2022, the parents filed a motion for reconsideration along with a declaration from Dr. Solomon indicating that she does not act as the parents' legal representative, nor was it the intention of the parents to hire her for such a role.

44.     The parents also signed and submitted  a *new* release with Dr. Solomon, making it clear that she is authorized to provide, "Services to work with [E.G.W.] in all matters relating to his/her/their need for special education and/or related services.  This does **not** include, 'representing the parent's child in litigation related to the provision of free and appropriate public education for that child.'"

45.     On October 10, 2022, the Hearing Officer denied the parents' motion for reconsideration despite the clear fact that Dr. Solomon established and swore that she did not, "represent the parent's child in litigation . . . ."  and had never acted in such a role.

46.     Dr. Solomon was not permitted to observe at Hardy.

47.     The parents observed at Hardy on November 27, 2022, and had many concerns about the program for E.G.W.  They ultimately concluded that it would not provide enough support for their daughter and could not meet her needs.

9

48.     A hearing was convened on January 31, February 1-2, and February 24, 2022 via a virtual platform.

49.     The school system bore the burden of proof of showing that DCPS offered E.G.W. an appropriate IEP and placement.

50.     The parent offered significant evidence to show that the proposed IEP and/or placement could not meet E.G.W.'s unique needs.

51.     On April 4, 2022, the Hearing Officer issued his Decision, incorrectly finding that the DCPS IEP and placement were reasonably calculated to provide E.G.W. educational benefit, thereby denying the parents all relief.

52.     The Hearing Officer overtly misapplied the burden of proof, looking only to the parents' experts and evidence to show that the IEP was inappropriate instead of requiring DCPS to meet its burden of showing the IEP could meet E.G.W.'s needs.

53.     The Hearing Officer apparently gave blind deference to DCPS witnesses and their opinions over the unrebutted expert opinions of the parents' witnesses.

54.     The Hearing Officer failed to acknowledge, much less rule on, the majority of the parent's legal and factual arguments as to why DCPS denied E.G.W. a FAPE.

55.     The Hearing Officer misstated the evidence.

56.     The Hearing Officer's Decision contained multiple errors of fact and law.

57.     The Hearing Officer's findings of fact are not regularly made.

58.     The Hearing Officer applied incorrect legal standards in reaching his Decision.

59.     The plaintiffs exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

60.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 59.

61.     Defendant's failure to provide E.G.W. with a free appropriate public education violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Develop an Appropriate IEP)

62.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 61.

63.     The failure of defendants to place and fund E.G.W. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

64.      Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 63.

65.      The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

66.      The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1.     Issue judgment for plaintiffs and against defendant;

2.     Issue injunctive relief, vacating the order of the Hearing Officer and ordering

defendant to reimburse plaintiffs for the tuition expenses and costs incurred in

enrolling E.G.W. at The Lab School for the 2021-2022 school year;

3.     Order defendants to place and fund E.G.W. at the Lab School prospectively while

declaring it to be her currently educational placement;

3.     Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including

the fees and costs of this action; and

4.     Award any other relief that this Court deems just.


Respectfully Submitted,

_____/s/ Paula A. Rosenstock_____
Paula A. Rosenstock          #494580
Michael J. Eig               #912733
Meghan M. Probert            #1004929

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Paula.Rosenstock@lawforchildren.com

Counsel for Plaintiff