UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **E.G.W.**, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>**DISTRICT OF COLUMBIA**,<br><br>   Defendant. | Civil Action No. 22-cv-1139 |

### MEMORANDUM OPINION

  Plaintiffs E.G.W., a child with disabilities, and her parents brought this action against the District of Columbia under the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs appeal the decision of a Hearing Officer who determined that the District did not deny E.G.W. a free appropriate public education. This court referred the case to Magistrate Judge Meriweather, who issued a Report and Recommendation on the parties' cross-motions for summary judgment. Judge Meriweather concluded that Plaintiffs failed to exhaust one of their claims, but that Plaintiffs' other claim should be remanded to the Hearing Officer for a more careful assessment of the evidence. Consequently, Judge Meriweather recommended that each party's motion be granted in part and denied in part. For the reasons below, this court will ADOPT the report and ACCEPT the recommendations of Judge Meriweather, GRANT IN PART and DENY IN PART each motion for summary judgment, and REMAND the matter to the Hearing Officer.

### I.   BACKGROUND

#### A. <u>Legal Background</u>

  The IDEA requires certain state and local educational agencies, including the District of Columbia Public Schools ("DCPS"), to provide disabled children with a "free appropriate public

Page **1** of **11**

education." 20 U.S.C. § 1412(a)(1)(A). To that end, school officials must develop, for each disabled child, "'a comprehensive strategy, known as an individualized education program, or IEP, tailored to the student's unique needs,' and have the IEP in place at the start of each school year." *McLean v. District of Columbia*, 264 F. Supp. 3d 180, 183 (D.D.C. 2017) (quoting *Leggett v. District of Columbia*, 793 F.3d 59, 63 (D.C. Cir. 2015)). An IEP need not guarantee an "ideal" education, but it should be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 399 (2017).

If a parent is dissatisfied with their child's IEP, they are entitled to an "impartial due process hearing" before an independent Hearing Officer. 20 U.S.C. § 1415(f)(1)(A); *see also id.* § 1415(b)(6)(A).[1] After giving the parties an opportunity to present evidence, the Hearing Officer must determine whether the IEP provides the child with a free appropriate public education. *Id.* § 1415(f)(3)(E). Either party may "appeal that decision to a federal district court." *McLean*, 264 F. Supp. 3d at 182 (citing 20 U.S.C. § 1415(i)(2)(A)).

B. **Factual Background**

E.G.W. is a child with multiple disabilities, including attention deficit hyperactivity disorder ("ADHD"), language disorder, and specific learning disorder with impairments in reading (dyslexia), written expression, and math. A.R. 41.[2] Between 2017 and 2021, DCPS paid for E.G.W. to receive full-time specialized instruction at the Lab School of Washington, a private school for students with disabilities. A.R. 916.

---

[1] That said, an IEP "need not conform to a parent's wishes in order to be sufficient or appropriate." *K.S. v. District of Columbia*, 962 F. Supp. 2d 216, 221 (D.D.C. 2013).

[2] A.R. refers to the Administrative Record, found at ECF No. 5-1 and ECF No. 6-1.

In January and August 2020, E.G.W.'s neuropsychologist, Dr. William Stixrud, performed several assessments on E.G.W. to evaluate her progress. In relevant part, the Woodcock-Johnson Tests of Achievement showed that E.G.W. was average in writing sentences and broad reading, below average in broad mathematics, and significantly below average in spelling. A.R. 8, 35–36. The Test of Word Reading Efficiency ("TOWRE") indicated that she was below average in phonemic decoding, a reading skill impacted by dyslexia. *See* A.R. 649. Dr. Stixrud also found that E.G.W. struggled with attention, executive functioning, and impulsivity. A.R. 38. Based in part on E.G.W.'s "quite severe ADHD" and "language disorder," Dr. Stixrud concluded that E.G.W. still required "full-time placement in a special education program" and recommended that E.G.W. continue at the Lab School. A.R. 41.

In January and May 2021, the Lab School issued assessment summaries for E.G.W. The January summary indicated that E.G.W. was reading at her "instructional" level, meaning that she could read at her grade level but only with support. A.R. 10, 50. The May summary indicated that E.G.W. could read "independently." A.R. 107. Nevertheless, results from the Decoding, Encoding, Red Word, Morphology Assessment ("DERMA"), reported in the January summary, indicated that E.G.W., then in fifth grade, had yet not mastered certain foundational reading skills that should be developed by third or fourth grade. A.R. 48–49, 700, 790.

In May 2021, the Lab School sent DCPS a proposed IEP for E.G.W.'s 2021–22 school year. Despite E.G.W.'s progress in reading, the Lab School still regarded reading as an area of concern. A.R. 127–31. The Lab School noted E.G.W.'s "weak decoding skills," "weak short-term memory," and her trouble following instructions, among other things. A.R. 130. Given E.G.W.'s challenges in both math and reading, the proposed IEP recommended that E.G.W. remain at the Lab School for full-time specialized instruction.

DCPS disagreed. It determined that E.G.W. had deficits in math but not reading, and concluded that she needed only ten hours per week of specialized instruction and six hours per month each of occupational therapy and speech/language therapy. DCPS further concluded that E.G.W. could receive these services at Hardy Middle School, a public school, and thus no longer needed to attend the Lab School. A.R. 116–17, 173. E.G.W.'s parents told DCPS that E.G.W. would remain at the Lab School. A.R. 177.

C. **Procedural History**

In August 2021, Plaintiffs filed an administrative complaint alleging that the IEP adopted by DCPS for the 2021–22 school year failed to address E.G.W.'s "deficits in reading and written language" and therefore denied E.G.W. a free appropriate public education. A.R. 186. Plaintiffs and the District participated in a due process hearing before Hearing Officer Banks. In September 2021, Plaintiffs requested permission for their educational consultant, Dr. Laura Solomon, to observe at Hardy Middle School. A.R. 5, 23. Hearing Officer Banks denied the request. A.R. 5.

In January and February 2022, Hearing Officer Banks heard testimony from five witnesses for the District and six witnesses for Plaintiffs. A.R. 6. Most relevant to this appeal are four of Plaintiffs' witnesses: (1) Dr. Stixrud, who was accepted as an expert in neuropsychology; (2) Dr. Solomon, who was accepted as expert in special education; (3) Katherine Douglas, the head of the intermediate division at the Lab School, who was likewise accepted as an expert in special education; and (4) Melissa Wood, director of speech, language, and literacy at the Lab School, who was accepted as an expert in speech and language psychology and reading literacy. A.R. 6, 23, 776. All four witnesses testified that E.G.W. still required intensive specialized instruction, including in reading. A.R. 656, 729, 794, 853.

In April 2022, Hearing Officer Banks ruled for the District. He concluded that the IEP devised by DCPS "was reasonably calculated to enable [E.G.W.] to make progress appropriate in light of [her] unique circumstances." A.R. 21. He reasoned that E.G.W.'s "reading scores are solidly in the Average range, as are [her] written language scores other than spelling." A.R. 19. He further reasoned that because the test scores undercut Plaintiffs' claim that E.G.W. needed full-time special-education services, Plaintiffs needed to support their claim with expert testimony. A.R. 19. But Hearing Officer Banks found the testimony of Dr. Stixrud not credible and the testimony of Dr. Solomon not persuasive. A.R. 20. He did not mention the testimony of either Douglas or Wood in the analysis portion of his decision. *See* A.R. 19–21.

Plaintiffs promptly appealed the Hearing Officer's decision to this court, as well as his earlier decision denying their request to have Dr. Solomon observe at Hardy Middle School.

## II.   LEGAL STANDARD

Any party "dissatisfied with the outcome of a due process hearing . . . under the IDEA may appeal that decision to a federal district court." *McLean v. District of Columbia*, 264 F. Supp. 3d 180, 183 (D.D.C. 2017) (citing 20 U.S.C. § 1415(i)(2)(A)). In reviewing a hearing officer's decision, "the district court is allowed to hear additional evidence at the request" of either party. *S.B. v. District of Columbia*, 783 F. Supp. 2d 44, 50 (D.D.C. 2011). But where, as here, "no additional evidence is introduced," "a motion for summary judgment operates as a motion for judgment based on" the administrative record. *Id.*

The party challenging the hearing decision bears the burden of "persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Although a reviewing court must accord due weight to the knowledge and expertise of the hearing officer, a hearing officer's decision "receives less deference . . . than would be the case in a

conventional administrative proceeding." *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 35 (D.D.C. 2013) (citation modified); *see also Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) ("[J]udicial review under IDEA is more rigorous than in typical agency cases[.]").[3] Moreover, a hearing decision which lacks "reasoned and specific findings deserves little" weight. *Reid*, 401 F.3d at 521 (quoting *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991)).

### III. DISCUSSION

Neither party objected to Judge Meriweather's conclusion that Plaintiffs failed to exhaust their claim regarding Dr. Solomon's request to observe. Accordingly, this court will grant summary judgment to the District with respect to that claim. The District did, however, properly object to Judge Meriweather's recommendation that the case be remanded to the Hearing Officer. This court therefore reviews that recommendation *de novo*. *See* Fed. R. Civ. P. 72(b).

Upon *de novo* review, the court agrees with Judge Meriweather that the case should be remanded. When a Hearing Officer fails to adequately consider record evidence and make sufficiently reasoned and specific findings, remand for further consideration is an appropriate remedy that allows the Hearing Officer to create a more complete record for this court's review. *See McNeil v. District of Columbia*, 217 F. Supp. 3d 107, 115 (D.D.C. 2016); *see also Options Pub. Charter Sch. v. Howe ex rel. A.H.*, 512 F. Supp. 2d 55, 57–58 (D.D.C. 2007). And here, Judge Meriweather is correct that the Hearing Officer (1) failed to adequately address the testimony of Wood and Douglas, (2) failed to address record evidence that undermined his

---

[3] The IDEA directs reviewing courts to "bas[e] [their] decision[s] on the preponderance of evidence"—a standard of review that is meaningfully less deferential than the substantial-evidence standard commonly used in agency-review cases. 20 U.S.C. § 1415(i)(2)(C).

conclusion, and (3) failed to adequately explain his decision to discredit Dr. Stixrud. The court will examine each issue in turn.

### A. The Testimony of Wood and Douglas

The District does not dispute that the Hearing Officer entirely "fail[ed] to evaluate Ms. Wood's testimony" and only briefly "described some of Ms. Douglas's testimony" without explaining "why he did not give [it] weight." R. & R. at 16–17, ECF No. 16. Instead, the District contends that the Hearing Officer "was not required to discuss the minutiae of every . . . witness's testimony as long as he provided substantial justification for his ruling." Def.'s Obj. at 2, ECF No. 18. That is true enough. *See K.S. v. District of Columbia*, 962 F. Supp. 2d 216, 225 (D.D.C. 2013) (A hearing officer need not always explain "why he was discounting the testimony of [a party's] experts" if "he otherwise provided substantial justification" for his decision.). But here, the testimony that the Hearing Officer overlooked was not "minutiae"—it was weighty evidence directly relevant to the central dispute between the parties: Whether, despite E.G.W.'s progress on several reading assessments, she still needed full-time specialized instruction at the Lab School. *Cf. Robinson v. Nat'l Transp. Safety Bd.*, 28 F.3d 210, 216 (D.C. Cir. 1994) (explaining that an agency cannot "ignore . . . testimony" directly relevant to "a critical fact" in controversy). The Hearing Officer's failure to address this critical evidence renders his reasoning insubstantial.

To support his decision, the Hearing Officer relied heavily on E.G.W.'s "solidly . . . Average" scores in reading. *See* AR 19. In his view, those scores indicated that E.G.W. no longer needed the level of services provided by the Lab School. *See id.* But the testimony of Wood and Douglas indicated that E.G.W.'s scores were not dispositive. Although the May 2021 assessment summary found that E.G.W. was reading "independently," A.R. 107, Wood testified that "there are more nuances to reading than one leveled reading assessment," A.R. 905. Wood further

pointed to assessments which indicated that E.G.W. had notable deficiencies in reading. *See, e.g.*, A.R. 800–01.

The testimony of Wood and Douglas, moreover, indicated that E.G.W. received improved scores because of the specialized instruction she received at the Lab School and that E.G.W.'s progress would falter without such instruction. Wood testified, for example, that although E.G.W. was "showing some nice progress," "in order to move her forward . . . she still needs a lot more *explicit* instruction." A.R. 794 (emphasis added). Douglas testified that E.G.W. "needs a lot of one-on-one redirection" and "executive functioning support" in the classroom. A.R. 733. Douglas further indicated that without "really close adult feedback, supervision, [and] redirection," E.G.W.'s "reading comprehension" would be "impact[ed]." A.R. 734. Thus, although one data point indicated that E.G.W. could read independently, Wood and Douglas's testimony indicated that she still needed close supervision and redirection and that she would falter without such support.

Because the Hearing Officer failed "to address [this] material testimony," a remand is warranted. *McNeil*, 217 F. Supp. 3d at 115; *see also M.O. v. District of* Columbia, 20 F. Supp. 3d 31, 41 (D.D.C. 2013) ("[H]ere several educational professionals provided support for the plaintiffs' position. The hearing officer's determination does little to address the concerns raised by those professionals."); *Holman ex rel. H.P. v. District of Columbia*, No. 19-cv-2600, 2020 WL 7340155, at *8 (D.D.C. Dec. 14, 2020) (holding that a remand was appropriate where the hearing officer "failed to meaningfully address some of Plaintiff's central arguments"). Once the Hearing Officer addresses this testimony, he may disagree with his prior conclusion that "no testimony" supported the assertion that E.G.W. would not "perform in a larger [classroom] environment." A.R. 20. Alternatively, the Hearing Officer may conclude that Wood and Douglas's testimony is

not persuasive. But because the Hearing Officer failed to make and explain such findings in the first instance, a remand is appropriate to allow the Hearing Officer to complete the record for this court's review.

### B. Other Record Evidence

Remand is also appropriate because the Hearing Officer failed to address significant evidence that undercut his conclusion. *Cf. Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence that undercuts its judgment," nor "minimize such evidence without adequate explanation."). Although several data points in the record support the Hearing Officer's finding that E.G.W.'s "reading scores are solidly in the Average range," A.R. 19, several other test results—overlooked by the Hearing Officer—paint a more complicated picture. In particular, the Hearing Officer did not address—*i.e.*, grapple with—results from the DERMA and TOWRE assessments which showed that E.G.W. struggled with certain foundational reading skills. A.R. 649, 790.[4] The Hearing Officer also mentioned part of a DCPS report which listed E.G.W.'s strengths in reading, without addressing the part of the same report which recounted her weaknesses. A.R. 18, 164–65.

The District does not dispute that the Hearing Officer failed to address test results that undercut his conclusion, such as the DERMA assessment. *See* Def.'s Obj. at 8. Instead, the District emphasizes that the Hearing Officer did *note* in his analysis section E.G.W.'s "Below Average" score "in Oral Expression and Phoneme Isolation" on one assessment, as well as Dr. Stixrud's testimony that E.G.W. had "weaknesses in attention and executive functioning, phonological awareness, and automatic verbal sequencing." A.R. 18. But the Hearing Officer

---

[4] The Hearing Officer mentioned the TOWRE assessment in the background section of his decision when summarizing tests performed by Dr. Stixrud. But he did not analyze the results and explain why they did not concern him or why he did not give them weight.

mentioned these and other data points only in passing without *explaining* why they did not show that E.G.W. still had reading challenges. Although the District offers some reasons to think these test results are not persuasive, *see* Def.'s Obj. at 9–10, the Hearing Officer failed to make such findings. Because he did not grapple with significant evidence that undercut his reasoning, the Hearing Officer failed to offer a "substantial justification for his determination" and did not complete the record with sufficiently reasoned and specific findings on an important evidentiary dispute. *K.S.*, 962 F. Supp. 2d at 225; *see also McNeil*, 217 F. Supp. 3d at 115.

### C. Dr. Stixrud

The Hearing Officer also failed to adequately explain his decision to discredit Dr. Stixrud's testimony. Credibility determinations are usually entitled to particular deference, *see McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 76 (D.D.C. 2014), so long as they are supported by "reasoned and specific findings," *McNeil*, 217 F. Supp. 3d at 114. But here, the Hearing Officer's credibility determination is undermined by his failure to make sufficiently reasoned and specific findings regarding Wood and Douglas's testimony, and several test results which undercut his conclusion.

The Hearing Officer discredited Dr. Stixrud in part because the results of the tests that Dr. Stixrud administered to E.G.W. allegedly "did not support the level [of] services he recommended" for her. A.R. 19. But two other witnesses—Wood and Douglas—gave testimony explaining why they thought E.G.W. needed full-time services despite her improved scores on some assessments. And other test results in the record not adequately addressed by the Hearing Officer—including the TOWRE assessment administered by Dr. Stixrud—indicated that despite her scores, E.G.W. still had reading challenges. The Hearing Officer's failure to consider this evidence and the ways in which it buttresses Dr. Stixrud's testimony thus tainted his credibility determination.

Judge Meriweather also faulted the Hearing Officer for taking "out of context" "Dr. Stixrud's statement that he does not 'want parents to have a report that they can't use.'" R. & R. at 18 (quoting A.R. 19). The Hearing Officer thought this statement showed Dr. Stixrud's "willingness to tailor" his reports "to meet his client's desired outcome." A.R. 19. To be sure, the Hearing Officer's concerns are not without reason. But Judge Meriweather is correct that the Hearing Officer did not address Dr. Stixrud's explanation that he meant only that he would correct a mistake or "take . . . out" embarrassing personal details at a parent's request "if it's not relevant, really to the kid." A.R. 697. On remand, the Hearing Officer should address whether Dr. Stixrud's explanation, as well as the other evidence he did not sufficiently evaluate, changes his assessment of Dr. Stixrud's credibility.

## IV. CONCLUSION

For the reasons explained above, the court will ADOPT the report and ACCEPT the recommendation of Judge Meriweather, GRANT IN PART and DENY IN PART each party's motion for summary judgment, and REMAND this case to the Hearing Officer for further consideration. A separate order will follow.

Date: October 29, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge